EXHIBIT  8

RECEIVED

DEC 1 7 2008

SLEIGH & WILLIAMS

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| JONATHAN CROWELL | ) | |
| SAMANTHA KILMURRAY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | CIVIL CASE NO. 2:08-cv-55 |
| ROBERT KIRKPATRICK | ) | |
| MICHAEL GORMAN | ) | |
| JEREMY EVANS | ) | |
| CHUCK ALECK | ) | |
| PETER DIMARINO | ) | |
| | ) | |
| Defendants. | ) | |

## Expert Report of John J. Ryan

1. My name is John Ryan. I have been actively involved in police practices and law enforcement since 1981. I was an active police officer for twenty years. In the final year of my active career and since my retirement in June of 2002 from police services, I have been involved in police and law enforcement practices as a private consultant regarding law enforcement issues.

2. My education includes a Bachelor of Science Degree in the Administration of Justice from Roger Williams University in Bristol, Rhode Island; a Master of Science Degree in the Administration of Justice from Salve Regina University in Newport, Rhode Island and; a Juris Doctor Degree from Suffolk University Law School.

1

3. From 1993 until 2002 I served as an adjunct faculty member in the graduate Administration of Justice Program at Salve Regina University in Newport, Rhode Island.  In that capacity I was responsible for graduate courses on Constitutional Issues in Law Enforcement; Police Misconduct/Civil Liability; Managing Police Organizations; Contemporary Issues in the Justice Field; Juvenile Justice; Mental Health Law and; Business Crime.

4. Since 2000, I have written eleven manuals for use by police officers.  Two of these manuals are extensively used by Rhode Island Law Enforcement agencies. These manuals are:  Rhode Island Law Enforcement Officers' Guide to Criminal Procedure, 2000, and Rhode Island Law Enforcement Officers' Bill of Rights, A Guide to Investigations and Hearings, 2000.  The other eight manuals are nationally distributed by the Public Agency Training Council as materials used in conjunction with training programs for public employees.  These manuals are: Legal and Liability Issues in the Public Schools, 2001; Policy Development for Public Safety Agencies, 2002, Civil Liability and Risk Management for Law Enforcement Agencies, 2003, Use of Force, 2004, Administrative Investigations In Law Enforcement Agencies, 2004, Legal and Liability Issues for Hostage Negotiators, 2005, Public Safety Media Relations (Manual and Guide) 2005, Arrest Search and Seizure, 2005, and Law and Best Practices for Successful Police Operations, 12 High Risk Critical Tasks That Impact Law Enforcement Operations and Create Exposure to Liability Litigation 2007.

5. I also author an annual publication for law enforcement officers titled, Case Law for Critical Tasks in Law Enforcement.  This field guide provides officers with a

2

legal update on critical tasks such as search, seizure, use of force, pursuit, investigations and interrogations. This guide has been adopted by agencies around the United States for use by law enforcement personnel.

6. I am currently the co-director of the Legal and Liability Risk Management Institute along with James Alsup, G. Patrick Gallagher and Lou Reiter. In that capacity I author and edit the institute's legal update service for law enforcement.

7. As part of the Legal and Liability Risk Management Institute I also conduct policy, training and operations reviews for law enforcement agencies throughout the United States. These reviews focus on the manner in which agencies treat the critical tasks in law enforcement operations. As part of these reviews I assist agencies in identifying areas in policy, training and operations that may be improved upon to bring the agency within the legal mandates and generally accepted practices in law enforcement operations.

8. Since 1993, I have conducted numerous training sessions for public employees. Participants in this training have included law enforcement officials, school officials, attorneys and judges. I have provided training in the following areas:

    a.  Policy development for public safety agencies.

    b.  Legal Issues in police use of force.

    c.  Legal Issues in internal affairs investigations.

    d.  Police misconduct/civil liability.

    e.  Legal/Liability Issues in Narcotics Operations.

    f.  Arrest, Search and Seizure, & Interrogation.

3

g.  Racial profiling.

h.  Legal issues in public schools.

i.  Media relations for public safety agencies.

j.  Constitutional Update for law enforcement officers.

k.  Basic training for detectives.

l.  Law enforcement officers' bill of rights/due process in administrative investigations.

m.  Legal/Policy and decision making factors in law enforcement pursuits including use of force/intervention tactics.

n.  Legal and Policy Issues for Hostage Negotiators.

o.  Legal and Liability Issues for SWAT Operations

9. I am a former police Captain of the Providence Police Department in Providence, Rhode Island where I served for twenty years before retiring in 2002. During my tenure as a police officer I served in the following capacities: patrol officer in both the Patrol Division and the Tactical Unit; a detective in the Detective Bureau; a sergeant in the Patrol Division; a lieutenant in the Patrol Division; Director of Training; Director of the Department's Office of Public Affairs and; Director of the Department's Administrative Staff. During most of my career I also took an active role in researching and authoring department policy.

10. Since my retirement in June of 2002 I have taught numerous courses on police policy and procedure, arrest, search and seizure, use of force, police pursuits, civil liability for law enforcement agencies and specialized courses for narcotics

4

officers, SWAT commanders, and Internal Affairs officers.   Participants in these courses have come from over 2500 police departments nationally. Officers in attendance have come from departments with under ten sworn officers and departments with sworn officers numbering in the thousands.

11. The course on policy and procedure focuses on critical tasks in law enforcement and includes, inter alia, policy issues relating to use of force; police pursuits; domestic violence; sexual harassment and external sexual misconduct; off-duty conduct; hiring & retention issues; internal affairs; supervisory practices; search and seizure; property and evidence; care, custody and transport of prisoners as well as training issues relating to critical tasks in law enforcement.

12. As a co-director of the Legal & Liability Risk Management Institute I regularly research and draft policies for law enforcement agencies relating to high-risk critical tasks including use of force, arrest-search & seizure, pursuit, emergency vehicle operation, special operations, internal affairs, hiring and selection-retention of officers, care-custody-control & restraint of prisoners, sexual harassment-discrimination & sexual misconduct, domestic violence, and dealing with the mentally ill.

13. In 2002, I was a featured speaker at the national conference for the International Association of Law Enforcement Planners, which was held in Long Beach, California.

14. In 2002, I was a featured speaker at the National Internal Affairs Investigators Association conference, which was held in Tampa, Florida.

5

15. In 2004, I was a featured speaker at the Rhode Island Bar Association's Annual Meeting, speaking on Constitutional Issues related to Law Enforcement practices.

16. In 2005, I was a featured speaker at the National Sheriffs' Association Annual Conference, held in Louisville, Kentucky, where I presented training for legal advisors on Internal Affairs and Employee Discipline.

17. In 2005, I was a featured speaker at the annual national conference for Public Risk Managers (PRIMA) in Milwaukee where I conducted training for risk managers and attorneys representing police departments. One of the trainings involved use of force while the second covered the high liability areas in law enforcement operations to include arrest, warrants, and other issues involving search and seizure, as well as police pursuits.

18. I have been a featured speaker annually, to include the 2008 session, of Georgetown Law Center's annual §1983 Civil Rights Litigation program. I have regularly presented materials related to law enforcement policy, training and supervisory practices as well as use of force.

19. In November of 2005, I was a featured speaker at the annual National Conference of the National Leagues of Cities & Towns in Seattle, Washington speaking on Contemporary Liability Risks for Law Enforcement Agencies.

20. In October of 2006, I was a featured speaker at the annual conference of National Internal Affairs Investigators' Association in Gatlinburg, Tennessee.

21. I have also provided lectures for attorneys on civil rights litigations relating to law enforcement operations, including a November of 2006 presentation for the Georgia Bar Association's ICLE program.

22. In 2007 I was a featured speak at the annual conference for the International Municipal Lawyers Association.

23. In 2007 I was a featured speaker at the Practising Law Institutes 24th Annual Section 1983 Civil Rights Litigation program. My presentation in this program resulted in a law review article in the Touro Law Review (Volume 24, Number 3, pages 569-600) "Recent Developments in the Use of Excessive Force by Law Enforcement" Karen Blum/Jack Ryan

24. In 2008 I was a featured speaker at the annual conference for the Association of American Law Schools, Civil Rights section, where I presented material on law enforcement policy, training, and generally accepted practices in pursuits and use of force.

25. My experience, training and background are more fully described in the attached curriculum vitae.

26. I have reviewed the following materials to date regarding this case:

      a. Complaint
      b. Answer
      c. Interview of Samantha Kilmurray
      d. Interview of Jonathan Crowell
      e. Interview of Robert Kirkpatrick
      f. Interview of Michael Gorman
      g. Interview of Jeremy Evans
      h. Interview of Vincent DiMarino
      i. Bates Stamped Documents p 1-157
      j. Deposition of Andrew Scott and Exhibits
      k. Report of Attorney General
      l. Report of Gordon Black

7

m. YouTube Video of event
n. Kilmurray discovery response
o. Crowell discovery response
p. Report of Andrew Scott
q. CV of Andrew Scott
r. Interrogatory Answers-Crowell
s. News Articles
t. CD of Photographs

27. This expert report is based upon the materials provided to this date. The opinions presented in this report are based upon my specialized experience, training and knowledge of police practices as well as my continued research and work with law enforcement nationally. This work includes conducting training for law enforcement around the United States as well as auditing the policies and operations of law enforcement agencies around the United States. My opinions are provided with a reasonable degree of certainty within the fields of law enforcement, police activity and police administration and supervision. I am familiar with police civil litigation and know the normal phases of discovery. With this in mind I recognize that there may be additional documentation as the case progresses. In the event that additional material is produced I shall be prepared to supplement this report.

28. At the outset it is important to note that this report is based upon the facts as presented by the material and specifically avoids drawing conclusions based upon credibility issues of the parties.

29. The events reviewed in this report began shortly after 1:00 p.m. on July 23, 2007 in Brattleboro, Vermont. After learning that protestors were beginning to gather on private property located at Putney [1002 Putney Road] and Black Mountain Roads, Lieutenant Kirkpatrick and Officer Gorman responded to the scene to

8

speak with the protestors. The Brattleboro Police Department also made contact with the owners of the property and determined that the owners did not want the protestors on their property. Upon arrival, Officer Gorman and Lieutenant Kirkpatrick attempted to determine who was in charge of the event in order to speak with this person. It is noted that this is both a common and suggested practice in law enforcement when dealing with protestors and demonstrations. The officers reported that they were unable to determine a leader of the group and therefore they spoke to several of the participants. The participants were informed that they were trespassing since the owner did not want them on the property. The protestors, who were concerned that a truck stop was going to be built upon the property, were also informed that there were no active plans to develop the property. The officers informed the protestors that they had one hour to vacate the property. In reviewing the statements of Samantha Kilmurray and Jonathan Crowell, it is indicated that this initial contact with the officers was cordial in nature. Lieutenant Kirkpatrick had further discussion with one of the owners of the property, Joji Robertson who indicated that the owners wanted the protestors issued trespass notices and removed from the property.

30. On July 23rd at approximately 4:00 p.m. Lieutenant Kirkpatrick and Lieutenant Evans responded back to the Putney Road location. The protestors, who had disregarded the order to vacate given earlier in the day showed no inclination to follow the police command to leave the property. At that time, the officers called the property owners who agreed that no action would be taken on the 23rd

and that the protestors were to be left on the property overnight. This was relayed to the protestors.

31. At approximately 7:00 a.m. on July 24th 2007, Officer Gorman, along with Lieutenant Kirkpatrick responded back to the Putney Road site. Upon their arrival they noted that only two protestors remained. They were identified as: Samantha Kilmurray and Jonathan Crowell, the plaintiffs in this case.

32. Based upon the statements of all of the persons present, to include the plaintiffs and the officers, there is no dispute that the Kilmurray and Crowell knew that Lieutenant Kirkpatrick and Officer Gorman as well as Lieutenant Aleck and Officer DiMarino, who arrived a few minutes later, were police officers. There is also no dispute that the officers gave several verbal commands to Kilmurray and Crowell which began with ordering them to leave the property as well as informing them, upon their refusal, that they were under arrest.

33. There is also no dispute that Crowell and Kilmurray had taken affirmative steps to defeat any attempt to arrest them by utilizing a mechanism commonly used in protests which locks individuals together or locks them to a fixed object such that law enforcement is unable to remove them. Some of these mechanisms are commonly referred to as "sleeping dragons" or "bear claws." The particular mechanism used by Crowell and Kilmurray was a 55 gallon drum filled with dirt, rebar and cement, with holes punched in each side for a PVC pipe in which a protestor could insert their arm and attach the chain bracelet on their wrist to the rebar across the opening of the internal end of the PVC pipe by use of a carabiner.

10

34. At that point the officers on scene took several steps in their effort to take Crowell and Kilmurray into custody. Following the failure of their presence and verbal commands, the officers attempted to move the barrel. Realizing the weight of the barrel as well as the likelihood of injuring Crowell and Kilmurray, it was determined that this option was not viable. The officers dug into the dirt in the barrel and called the Department of Public Works to come to the scene to attempt to dig out the barrel. This failed when it was determined that the dirt went between rebar, cement, and PVC pipe. The officers attempted empty hand control by attempting to pull Crowell and Kilmurray from the barrel. This also failed when the pair began to shout in pain and the officers realized that they achieved no movement by pulling them.

35. It is also undisputed after reviewing the statements of the parties involved that at some point Kilmurray indicated to a person across the street, that she wanted additional people called to the scene.

36. After all of the aforementioned attempts to take these individuals into custody failed, Lieutenant Kirkpatrick determined that the officers would utilize their Tasers in the drive-stun mode in order to gain compliance from these individuals who were refusing to release themselves from the barrel.

37. It is noted that there is some indication in the materials that Crowell was resisting officers' efforts to remove a bottle with liquid (water) from his free hand as well as his sleeping bag. There is also an indication that Crowell kicked his feet in the officers' direction at various points of this encounter. Lieutenant Kirkpatrick indicated that Crowell also threw an elbow toward him but missed.

11

38. The officers fully briefed Kilmurray and Crowell on the Taser before the Tasers were applied simultaneously to the arms of each of these individuals. Lieutenant Kirkpatrick used his taser on Kilmurray, while Officer DiMarino, at Lieutenant Kirkpatrick's direction applied the taser to Crowell. The first contact was short and neither individual released. The second contact of about two-seconds led to compliance by Kilmurray. It should be noted that between each contact, the officers again gave verbal commands, thereby de-escalating back to verbal before moving to an additional touch-tase. Following a third deployment on Crowell which due to movement may have led to more than one contact, Crowell released his lock to the barrel and was taken into custody. Neither Crowell nor Kilmurray reported any injury beyond marks on their arms at the contact points.

39. It is my opinion, based upon my specialized background, experience, training and education as well as my continued research, writing, training, auditing and consultation with law enforcement nationwide that the decision to utilize tasers in the drive-stun mode on both Crowell and Kilmurray, under the circumstances faced by these officers, was consistent with generally accepted police practices, training, and legal mandates governing law enforcement's use of force.

40. Officers throughout the United States are trained in two formulas with respect to use of force decision making and justification. The first of these formulas is a three-part test which parallels the mandates announced by the United States

12

Supreme Court in *Graham v. Connor.*[1]  The three-part test directs officers to consider the seriousness of offense; whether or not the subject poses a physical threat to the officer or anyone else and finally whether the subject is actively resisting or attempting to evade arrest by flight.

41. The second formula is the "Use of Force Continuum." While agencies utilize different force continuum models, all of the models recognize that officers have various subject control tactics available to them and that these tactics range from a low-level such as officer presence and verbal commands to the highest level which is deadly force.  It should be recognized that a use of force continuum is not a ladder which must be climbed step by step.  Instead it is a presentation of various force options, each of which must be objectively reasonable under the circumstances with which the officer is faced.

42. In this case, the officers had, from the beginning, attempted several steps to avoid a confrontation or arrest of these subjects.  The officers, on the first day, attempted to locate a group leader. When that failed they appealed to the group and gave them time to vacate the private property rather than demanding an immediate departure following a trespass order.  When the initial time had come and gone, the officers extended the time to allow the trespassers to remain on the property overnight.

---

[1] This formula is derived from *Graham v. Connor,* 490 U.S. 386 (1989) and can be found in law enforcement training lesson plans as well as Use of Force policies throughout the United States. See e.g. International Association of Chiefs of Police, Use of Force Model Policy 2005, IACP Model Policy Center, Virginia 2005.

13

43. Officers throughout the United States are trained that they may use reasonable force to effect an arrest.[2] It is not incumbent that the officer be under attack since such a requirement would preclude the use of force where a suspect simply pulls away from an officer and walks away. Officers may even use deadly force under limited circumstances to prevent escape.

44. The following day when the trespassers refused to leave and would not unlock themselves from the barrel, the officers utilized several options on the force continuum. When command presence, verbal commands, and soft-empty hand control did not work, the officers utilized what is generally considered to be the next level of force in the force continuum, the Taser, which was successful. As a result, the officers brought an unlawful situation safely and effectively under control.

45. Contemporary law enforcement studies and training indicates that when a person is actively resistant but not assaultive, officers should use Taser in the push-stun (also referred to as drive-stun or touch-stun mode).[3] It is noted that that the

---

[2] See, EG. IACP Model Policy "Use of Force" effective August 2001: Use of Non-Deadly Force
1.   Where deadly force is not authorized, officers may use only that level of force that is objectively reasonable to bring an incident under control.
2.   Officers are authorized to use department-approved, non-deadly force techniques and issued equipment to
   a.   Protect the officer or others from physical harm;
   b.   Restrain or subdue a resistant individual; and/or
   c.   Bring an unlawful situation safely and effectively under control.

[3] See, "Taser Technology Review, Final Report" OPCC File# 2474, June 14, 2005, Office of the Police Complaint Commissioner, British Columbia 2005 p.34. "For subjects who are displaying active resistance, those who are resisting an officer's efforts to take them into custody without attacking the officer, where an officer believes the use of a CED is appropriate we are recommending that CED's be used in a push stun mode only."

14

officers utilized the "drive-stun" or "push-stun" mode as directed by these studies.

46. Throughout the materials there are references to the concepts of active versus passive resistance. It is noted that the statements of the officers indicate their belief that these two individuals were active resistors.

47. It is well known in law enforcement that persons who take affirmative steps to defeat an officer's ability to take them into custody are active resistors. The use of the barrel-mechanism was such an affirmative step and is recognized by law enforcement as a form of active resistance.

48. Plaintiff's expert makes several references to Florida Agencies and their dealing with protestors. It should be recognized that training by the lead agency in some of the protests mentioned included training on the use of mechanisms such as those used by the protestors in this case. Sleeping dragons and similar devices have been clearly defined in law enforcement training as "Active Resistance." [4]

49. The use of taser to effect an arrest, where the subject is actively resisting is well-recognized in law enforcement, thus the actions of these officers met all generally accepted practices, training, and legal mandates related to law enforcement's use of force.

50. At this stage of my review I do not know if I may be asked to review additional documents. Should I be asked to review any additional documents I will be prepared to render additional opinions or supplement the opinions stated within this report.

---

[4] See, City of Miami- FTAA Training (included, agreed to, and adopted by nearly 40 state local and federal agencies) 2003.

15

51. At this point in the development of this case I do not know whether I will be using any demonstrative aids during my testimony. Should I decide to use any such tool; I will assure that they are made available for review, if requested, prior to their use.

52. My fees for this professional service is a flat case development fee of $7500.00 and a fee of $2500 for a deposition in Rhode Island or $2500 per day plus expenses for services away from Rhode Island including depositions and trial appearances.

This report is signed under penalty of perjury on this 12th day of December 2008, in Lansing, Michigan

_____

John J. Ryan

16

# John "Jack" Ryan

5101 Decatur Blvd.
Suite L
Indianapolis, Indiana  46241
Office (800) 365-0119
Cellular Phone: (401) 692-1555
FAX (317) 821-5096
Email:  jackryan2@cox.net

## EDUCATION
| | |
|---|---|
| 1990-1994 | Juris Doctorate, Cum Laude, Suffolk University Law School |
| 1986-1990 | Master of Science, Administration of Justice, Salve Regina University |
| 1981-1986 | Bachelor of Science, Administration of Justice, Roger Williams University |

## EMPLOYMENT
| | |
|---|---|
| 2002- | Police Practices Consultant, Trainer, Auditor |
| 2003- | Co-Director, Legal Liability Risk Management Institute |
| 1982-2002 | Police Officer, Providence Police Department |

| | |
|---|---|
| 1982-1985 | Patrol Officer, Patrol Division |
| 1985-1987 | Patrol Officer, Tactical Division |
| 1987-1988 | Detective, Detective Division |
| 1988-1992 | Sergeant, Patrol Division |
| 1992-1995 | Lieutenant, Patrol Division |
| 1995-2000 | Director of Training |
| 1995-2001 | Department Public Information Officer |
| 1997-2001 | Captain, Administrative Staff Division |
| 1998-2001 | Director of Administration |
| 2001-2002 | Research and Policy |

\* As Director of Administration for the Providence Police Department-Supervisory
Responsibilities included:

- Human Resource Bureau
- Prosecution Bureau
- Administrative Staff
- Public Information Office
- Advisor to Chief of Police and Internal Affairs
- Training Division
- MIS
- Record Bureau
- Fleet Operations
- Property/Evidence

| | |
|---|---|
| 1993-2002 | Adjunct Professor, Salve Regina University |
| | Administration of Justice Graduate Program |
| | Courses: |

Constitutional Issues in Law Enforcement
Police Civil Liability
Juvenile Justice
Mental Health Law
Managing Police Organizations
Business Crime
Contemporary Issues in the Administration of Justice

1

## PUBLICATIONS:

| | |
|---|---|
| 2000 | Rhode Island Law Enforcement Officers' Guide to Criminal Procedure |
| 2000 | Rhode Island Law Enforcement Officers' Bill of Rights, A Guide to Investigations and Hearings. |
| 2001 | Legal and Liability Issues in Public Schools |
| 2002 | Policy Development for Public Safety Agencies |
| 2003 | Civil Liability and Risk Management for Law Enforcement Agencies |
| 2003 | Case Law on Critical Tasks in Law Enforcement |
| 2003 | Legal Guide to Administrative Investigations |
| 2004 | Law Enforcement Legal/Liability Update |
| 2005 | School Legal Update |
| 2005 | Critical Tasks in Law Enforcement, A Legal Guide for Officers and Supervisors (Annual) |
| 2005 | Arrest, Search & Seizure (Annual) |
| 2005 | Legal & Liability for Law Enforcement Negotiators |
| 2005 | Use of Force |
| 2006 | Legal & Liability Issues in SWAT, Emergency Response and Special Operations |
| 2007 | Law and Best Practices for Successful Police Operations, 12 High Risk Critical Tasks That Impact Law Enforcement Operations and Create Exposure to Liability Litigation |
| 2008 | Recent Developments in the Use of Force, Excessive Force by Law Enforcement Touro Law Review, Vol. 24, Number 3 |
| 2008 | 25th Annual Section 1983 Civil Litigation, by Practising Law Institute Video/Audio-The Unbiased Witnesses in Law Enforcement Litigation. Vol. 1, Section 8 |

## PUBLISHED ARTICLES:

| | |
|---|---|
| 2004 | Crime and Justice International May/June Vol. 20 No. 80 "High Speed Vehicle Pursuit" pp. 30-34; "Developing Trends in Stop & Frisk" p.35; "Fighting Words Directed at a Police Officer: Viability and Liability" pp.36-37 |
| 2004 | The Law Enforcement Trainer published by American Society of Law Enforcement Trainers, Volume 19, number 3  May/June "Training Liability In The Use Of Deadly Force" pp 24-28. |
| 2004 | Crime and Justice International July/August Vol. 20 No. 81 "Law Enforcement Liability Issues-Agency or Individual Officer's Response to Misconduct by Others may Create Agency or Individual Liability" pp. 29-30. |
| 2004 | Public Risk, Published by the Public Risk Management Association, July 2004, Vol. 19 No. 6 "Handcuffs: How to Manage the Risk" pp.14-17. |
| 2006 | Public Risk, Published by the Public Risk Management Association, January 2006, Vol. 21 No. 2 "A Continuing Story Taser Policies for Police Departments Continue to Evolve" pp. 14-17 |
| 2006 | Public Risk, Published by the Public Risk Management Association,  March 2006, Vol. 21 No. 3 "Freeze" Off-Duty Firearms and Intervention: Avoiding Tragedy and Liability" pp. 16-18. |
| *** | Note: Articles published electronically on a weekly basis and archived- available at www.patc.com |

## AWARDS:

| | |
|---|---|
| 1991 | Moot Court Outstanding Performance Award |
| 1992 | American Jurisprudence Award, Constitutional Law |
| 1994 | American Jurisprudence Award, Trial Practice |
| 1999 | Salve Regina University, Alumnus, Distinguished Service Award |

## LAW ENFORCEMENT ACHIEVEMENT AWARDS:

| | |
|---|---|
| 1986 | Rhea Archambault (Officer of the Year) Award |

2

1987    City Council Award, Off-Duty Breaking and Entering Arrest
1996    Chief's Award, Off-Duty Shooting in Progress Arrest
1982-2002-Over 35 Letters of Commendation

## CONFERENCE PRESENTATIONS/TRAINING SESSIONS:

1993    Search and Seizure in Schools, Rhode Island Legal/Educational Partnership
1995    Basic Training for Detectives, Rhode Island State Police
1997    Police Civil Liability Seminar, Salve Regina University
1998    Police Media Relations Seminar, Salve Regina University
1999    Law Enforcement Officers' Bill of Rights Seminar, Salve Regina University
2000    Police Misconduct/Racial Profiling, Georgetown University Law Center
2000    International Crime Prevention, University of Warwick, UK.
2000    Criminal Procedure Update Seminar, Salve Regina University
2001    Legal Issues in Use of Force Seminar, Salve Regina University
2001    Advanced Internal Affairs Seminar, Las Vegas
2002    Legal and Liability Issues in Public Schools, throughout the United States
2002    Policy Development for Public Safety Agencies, throughout the United States
2002    International Association of Law Enforcement Planners National Conference
2002    National Internal Affairs Investigators Association National Conference
2003    Legal and Liability Issues in Public Schools, throughout United States
2003    Policy Development for Law Enforcement Agencies, throughout United States
2003    Civil Liability and Risk Management for Law Enforcement Agencies, throughout United
        States
2003    Advanced Internal Affairs, Myrtle Beach, SC, Las Vegas, NV.
2003    Georgetown Law Center/Civil Rights Litigation-§1983
2003    Georgia Internal Affairs Investigators Annual Conference
2003    Tennessee Chiefs' Association Conference Training
2003    Alaska Chiefs' Association/FBINAA Executive Development Conference
2004    Office of Corporation Counsel/Metropolitan Police, Washington D.C.
2004    Legal and Liability Issues in Public Schools, throughout United States
2004    Policy Development for Law Enforcement Agencies, throughout United States
2004    Civil Liability and Risk Management for Law Enforcement Agencies, throughout United
        States
2004    Legal Issues in Narcotics Operations, throughout United States
2004    Critical Legal Tasks for Patrol Officers, Illinois Mobile Training Unit
2004    Georgetown Law Center/Civil Rights Litigation-§ 1983
2004    Rhode Island Bar Association Annual Conference- "Stop in the Name of the Law"
2004    Oklahoma Attorney General's Annual Conference "Policy Summit" Policy session for
        Police Executives
2004    Texas Commission Law Enforcement Officer on Standards and Education annual
        conference for Texas Trainers/ "Legal Issues for Law Enforcement Trainers"
2005    International Law Enforcement Educators and Trainers Association Annual
        Conference/Chicago "Trainers and Use of Force Liability"
2005    Legal and Policy Issues in the Use of Force- throughout United States
2005    Georgetown Law Center/ Civil Rights Litigation "Less-Lethal Force"
2005    Arrest, Search & Seizure, and Questioning-throughout United States
2005    Civil Liability and Risk Management in Law Enforcement-throughout United States
2005    Internal Affairs/Administrative Investigations- throughout United States
2005    PRIMA National Conference-Milwaukee "Use of Force" and "Critical Tasks in Law
        Enforcement"
2005    National Sheriff's Association Annual Conference-Louisville "Legal Issues in
        Administrative Investigations"
2005    National Leagues of Cities and Towns (Risk Consortium)-Seattle "Identifying
        Contemporary Risks in Law Enforcement Liability"
2006    Continued training programs for Public Agency Training Council throughout the United
        States to include, Policy Development and Implementation, Arrest Search & Seizure, Use

3

of Force, Civil Liability Issues, Liability Issues for Narcotics Officers, Legal Issues for Tactical Operations, Liability Issues in Public Schools and Internal Affairs

| | |
|---|---|
| 2006 | Georgetown Law Center/Civil Rights Litigation "Police Misconduct" §1983 |
| 2006 | National Internal Affairs Investigators Association Annual Conference, Gatlinburg Tennessee "Use of Force and the Internal Affairs Process" |
| 2006 | Georgia Bar Association "ICLE", Atlanta Georgia "Evaluating Police Liability Claims" |
| 2007 | Continued training programs for Public Agency Training Council throughout the United States to include, Policy Development and Implementation, Arrest Search & Seizure, Use of Force, Civil Liability Issues, Liability Issues for Narcotics Officers, Legal Issues for Tactical Operations, Liability Issues in Public Schools and Internal Affairs |
| 2007 | Georgetown Law Center/Civil Rights Litigation: Session 1 "Law Enforcement Policy and Training in Use of Force" ; Session 2: "Law Enforcement- the ADA and Persons of Diminished Capacity." |
| 2007 | South Dakota Annual Conference for Chiefs and Sheriffs-"Legal Update on High Liability Issues in Law Enforcement" |
| 2007 | Pennsylvania Chiefs of Police-"Legal Update on High Liability Issues in Law Enforcement" |
| 2007 | International Municipal Lawyer's Association Annual Conference- "Garrity and the Administrative Interview" |
| 2007 | Practising Law Institute- "Use of Force" 24th Annual Conference Section 1983 Civil Rights Litigation |
| 2008 | Association of American Law Schools Annual Conference- "Law Enforcement Policy and Training/Use of Force & Pursuit in the Aftermath of Scott v. Harris" |
| 2008 | 25th Annual Section 1983 Civil Litigation, by Practising Law Institute Video/Audio-The Unbiased Witnesses in Law Enforcement Litigation. Vol. 1, Section 8 |
| 2008 | Texas com. Law Enforcement Standards and Education "Liabilty Management for Law Enforcement Trainers |

## CURRICULUM DEVELOPMENT:

| | |
|---|---|
| 1994 | Providence Police Academy Entry-Level, 22 Week Program Revamp |
| 1993 | Graduate Course, Police Civil Liability |
| 2002 | Legal and Liability Issues in Public Schools |
| 2002 | Policy and Procedure for Law Enforcement Agencies |
| 2003 | Civil Liability and Risk Management for Law Enforcement Agencies |
| 2003 | Legal Issues in Administrative Investigations |
| 2004 | Legal and Liability Issues for Tactical Commanders |
| 2004 | Legal Issues/ Case Law Update for Narcotics Investigators |
| 2004 | Investigation of Officer Involved Shootings |
| 2005 | Arrest, Search & Seizure, and Questioning |
| 2005 | Jail Liability Issues |

## SPECIALIZED LAW ENFORCEMENT TRAINING

Law Enforcement Instructor Development, Federal Bureau of Investigation
Advanced Tactical Management, Prince William County Criminal Justice Academy
Emergency Services Media Relations, Old Dominion University
Rights of Police Officers, Labor Relations Information System
High Performance Police Management, Police Management Association
Crime Prevention for Administrators, National Crime Prevention Institute
Effective Speaking and Human Relations, Dale Carnegie Inc.

## PROFESSIONAL AFFILIATIONS:

Rhode Island Bar Association
Fraternal Order of Police
Providence Police Association
International Municipal Lawyers Association

4

**ADMITTED TO PRACTICE OF LAW:**
       State of Rhode Island, November 1994
       District of Rhode Island Federal Court, June 1995

**VOLUNTEER ORGANIZATIONS:**
       Northern Rhode Island Vikings Junior Hockey Association, President 2002-2004
       Northern Rhode Island Vikings Junior Hockey Association, Board Member 1998-2003

**CASE CONSULTATIONS:**
       June 2002: Estate of Weibel, New Hampshire, Retained (Plaintiff)
       December 2002: McGowan v. Siomos, CA NO. 00-40113-NMG (Mass. Fed. Dist. Ct.)
       (Testimony) (Plaintiff)
       June 2003: Parker v. Swansea et al., CA NO. 01-10063NG,( Mass. Fed. Dist. Ct.)
       (Testimony) (Plaintiff)
       July 2003: Gilbert v. Atkinson et al., CA NO. 1:03-CV-108-3 (GA. Fed Dist. Ct. Middle
       Dist.) (Retained) (Defendant)
       October 2003: Neal v. Pinellas County et al., CA NO. 8:03-CV-247-T-17MAP (Fla. Fed
       Dist. Ct. Tampa Div.) (Retained) (Defendant)
       December 2003: Hickey v. NYPD et al., (N.Y. Fed. Dist. Southern) (Deposed) (Plaintiff)
       December 2003: Mills v. Merrimack et al., Index # 01CV6506 (N.H. Fed. Dist. Ct.)
       (Retained) (Plaintiff)
       March 2004: Richman v. City of Anacortes, NO. C03-2559 (Washington Fed. Dist. Ct.
       Western Dist. At Seattle) (Retained) (Defendant)
       July 2004: Brown v. City of McDonough GA. Et al., NO. 1 03 CV 2699 (GA. Fed. Dist.
       Ct. Northern District, Atlanta Division) (Deposed) (Defendant)
       May 2005: Graham v. Bennett et. al. No. 04-2136, (Ill. Fed Dist. Central Dist. Urbana).
       (Retained) (Defendant)
       June 2005: Taylor v. Ohio State Patrol, No. 2004-07891 (Court of Claims Ohio)
       (Testimony) (Defendant)
       July 2005: Reis v. Delaware Port Authority, No. CAM-L-4988-03 (Superior Court of
       New Jersey) (Retained) (Defendant)
       July 2005: Schneider v. Franklin County Ohio (Deposed) (Plaintiff)
       August 2005: White v. Nault, CIVIL ACTION NO.3:02CV1589 (WWE) (Retained)
       (Plaintiff)
       September 2005: Kesser v. City of Miami, Case No. 04-22608 CIV Jordan/Brown (U.S.
       Dist. Ct. Southern District of Florida) (Retained) (Defendant)
       November 2005: Aroneo v. Ferraioli, Morris County Police, Docket No. MRS-L-1946-03
       (Superior Court of New Jersey Law Division: Morris County (Retained) (Defendant)
       January 2006: Atwood v. Nieliwocki et al., Civil Action No.3:05CV-0248 (JBA)
       (Connecticut Federal District Court) (Testimony) (Plaintiff)
       January 2006: O'Brien v. City of Pembroke Pines, et al., (Deposed) (Defendant)
       February 2006: In the Matter of Detective Cooke, Disciplinary Hearing, Sheridan
       Wyoming. (Testimony) (City).
       April 2006: Martin v. Kent, (Case No. : 24-C-05-005960) Circuit Court for Baltimore
       City (Retained) (Defendant).
       April 2006: Matter of Reyes, Georgia (Defendant)
       May 2006: Ripley v. City of Lake City, Florida, (Deposed) (Defendant), Civil Action
       NO: 3:04-cv-1328-J-16MCR
       May 2006: Torres v. Love, (Deposed) (Plaintiff) U.S. District Court, District of New
       Jersey, Civil Action NO. 04-cv-2233 (FLW)
       May 2006: Olson v. Pelkey, (Retained) (Plaintiff) U.S. District Court, District of
       Minnesota, Case No. 05-1189 MJD/FLN
       June 2006: Williams v. City of Champaign, (Retained) (Defendant) U.S. District Court,
       Central District of Illinois Case No. 04-2150

July 2006: Conn v. City of Reno, (Retained) (Defendant) U.S. District Court, District of
Nevada Case No. CV-N-05-0595-HDM-VPC

September 2006: Parker v. City of South Portland, (Testimony) (Plaintiff), U.S. District
Court, Maine, Case No. CV-06-129-GZS

October 2006: MP & Patel et al., v. City of Spartanburg (Retained) (Defendant)

October 2006: Estate of Brutsche et al. v. King County et al., (Retained) (Plaintiff)
United States District Court, Western District of Washington/Seattle, Case No. CV05-
15382

October 2006: Sharp v. Fischer et al., (Deposed) (Defendants), U.S. District Court,
Southern District of Georgia/Savannah, Case No. CV406-020

October 2006: Meir v. McCormick, (Testimony) (Plaintiff), U.S. District Court,
Minnesota, Case No. 06-190 (ADM/JSM)

October 2006: Montiel v. Liepold, (Testimony) (Plaintiff), U.S. District Court,
Minnesota, Case.No. 06-331 (JNE/JJG)

December 2006: Banks v. City of Hampton, (Retained) (Defendant), Clayton County
Superior Court, GA.

December 2006: Ecxford v. City of Zion, et al., (Deposed), (Defendant),  Circuit Court of
Illinois, Lake County, No. 05 L 855

January 2007: State of New Jersey v. Gillespie, (Testimony), (Defendant), Superior Court
Gloucester County, Indictment 06-0300268

January 2007: Estate of Joseph Kovack v. City of Philadelphia, U.S. District Court for the
Eastern District of Pennsylvania (Deposed)

February 2007: Estate of Brittany Wayne, (Deposed) (Defendant), New Mexico.

March 2007: Rauen/Hartman v. City of Miami, (Retained) (Defendant), U.S. District
Court, Southern Dist. Florida, CA No. 06-21182-CIV-JORDAN

March 2007: Bryan v. Las Vegas Metropolitan Police Department, (Deposed)
(Defendant), U.S. District Court, District of Nevada, Case No. 2:06-cv-1103-KJD-PAL

March 2007:  Estate of Cruz v. City of Camden, et al, CA No. 06-cv-1809; Agosto v.
City of Camden et al, CAM-L-5454-06; Roman-Santiago v. City of Camden, CAM-L-
5458-06 (Retained) (Defense) (New Jersey State Court) [Same Event-three filings]

March 2007: Wilson v. City of College Park, CA No. 2007EV001667B (Deposed)
(Defense) (Georgia State Court)

April 2007: Johnson v. Tousignant, U.S. Dist. Of Vermont, CA 1:06- cv-128 (Retained)
(Defense)

March 2007: Lee v. City of Franklin, U.S. Dist., Northern Dist. GA., CA 3:06-CV-127-
JTC (Retained) (Defense)

May 2007: Rider et al v. City of Oakland et al., U.S. Dist. Northern Dist. CA., CA. No.
C-05-03204-MHP (Retained) (Plaintiff)

May 2007: Carangelo v. Sliders et al., Superior Court of Connecticut, No. 04-183054 S
(Deposed) (Plaintiff)

June 2007: Andrews v. City of Douglasville, Superior Court of Douglas County, GA.,
CA. No. 07CV00558 (Retained) (Defense)

June 2007: Navratil v. Johnson, U.S. Dist. Minnesota, CA. No. 06-2613-ADM-AJB
(Retained) (Plaintiff)

June 2007: Baker v. Harper, et al., U.S. Dist. GA., CA. No. 1:06-CV-1421 (Deposed)
(Defense)

July 2007: Krout v. City of Russellville, U.S. Dist. (Eastern Dist./Western Division)
Arkansas, CA. No. 4-06-CV-01294 JLH (Retained) (Defense)

July 2007:  Town v. Thelen, U.S. Dist. Minnesota, CA. No. 06-3113 PAM/RLE
(Retained) (Plaintiff)

July 2007: Wade v. Colaner, U.S. Dist., New Jersey, CA. No. 06-3715 (Retained)
(Defense)

July 2007: Marshall v. Reno Police Department et al., U.S. Dist. Nevada, CA. No. 3:07-
cv-00222-ECR-RAM (Retained) (Defense)

August 2007: Myers v. City of Orangeville (Testimony) (Defense)

6

November 2007: Stockton v.Auren et al., U.S. Dist. Minnesota, CA. No. 07-556
(JRT/FLN) (Retained) (Plaintiff)
December 2007: Cundiff v. Postel, U.S. Dist. E.D. Tennessee, C.A. No. 3:06-CV-437
(Retained) (Defense)
December 2007: Scott v. Town of Brattleboro, U. S. District Court District of Vermont,
C.A. No. 1:07-cv-233-jgm (Retained) (Defense)
January 2008: England v. LVMPD, et al, U. S. District Court District of Nevada, CA No.
2:07-cv-01238-PMP-GWF (Retained) (Defense)
January 2008: Estate of Peyton Strickland v. New Hanover County Sheriff's Dept
(Retained) (Defense)--Settled
January 2008: Taylor, et al v Deputy Scott Wood, et al (Retained) (Defense)
January 2008: Costales v White, et al, U. S. District Court District of New Mexico, CA
No.07-CV-00827(Retained) (Defense)
February 2008: Saiz v Bernalillo County, et al, U. S. District Court District of New
Mexico, CIV 07 790 JAP/LFG (Testified) (Defense)
February 2008: Mahoney v Miller, U. S. District Court District of Minnesota, Case No.
07-CV-1851 (JNE/SRN), (Retained) (Defense)
February 2008: Hoke v Municipal City of Tempe, AZ, Superior Court of the State of
Arizona in and for the County of Maricopa, CV2007-052506 (Retained) (Defense)
February 2008: Smith v LVMPD, U. S. District Court District of Nevada,
2:07-cv-1194-JCM (GWF) (Retained) (Defense)
March 2008: Williamson v Grant, et al, U. S. District Court, District of Maryland,
Baltimore, CA No.: CCB-07-CV1147, (Retained) (Defense)
April 2008: Crowell & Kilmurray v Kirkpatrick, U.S. District Court District of Vermont,
2:2008cv00055, (Retained) (Defense)
April 2008: Liddy, et al. v. City of Los Angeles, California District Court,
2:2005cv05697, (Retained) (Defense)
April 2008: Michael Ross v. The City of Las Cruces, et al., District Court Dona Ana,
New Mexico, No.CV-2007-1688, (Retained) (Defense)
April 2008:Ahmed Ahqeirat, et al. U.S. Airways Group, Inc., et al. U.S. Court District of
Minnesota, No. 07-CV01513 (ADM/AJB) (Retained) (Defense)
April 2008: Paul Wayne, et al. v. Bernalillo County, et al. US District Court for the
District Court of New Mexico, No. CIV-07-1255 BB/RLP, (Retained) (Defense)
April 2008: Boria v. Bowers, et al, U.S. District Court for the Eastern District of
Pennsylvania, No.06-4384, (Retained) (Defense)
April 2008: Walker v. Las Vegas Metro Police Department, U.S. District Court District
of Nevada, No.2:07-cv-00740-PMP-LRL, (Retained) (Defense)
June 2008: Kasilyan v. Las Vegas Metro Police Department, U.S. District Court For the
District of Nevada, Case No. 2:08-CV216-PMP-RJJ, (Retained) (Defense)
July 2008: Jeffery Keating, et al. v. City of Fort Lauderdale, et al. U.S. District Court For
The Southern District Of Florida Miami Division, Case No.07-CV-23005-
MARTINEZ/Brown, (Retained) (Defense)
July 2008: Jeffery Keating, et al. v. City of Miami, et al. U.S. District Court For The
Southern District Of Florida Miami Division, Case No.07-CV-23005-
MARTINEZ/Brown, (Retained) (Defense)
July 2008: Kiri Walker, et al., v. Marshallville, Georgia, et al., U.S. District Court Middle
District of Georgia Macon Division, No.5:07-CV-476-CAR (Retained) (Defense)
September 2008: State Of New Jersey v. David Romeo, Superior Court of New Jersey
Cape May County Law Division, Indictment No. 08-08-00654-1(Retained) (Defense)
September 2008: Ronald T. Whitaker v. Springettsbury Township, US District Court For
The Middle District OF Pennsylvania, No. 08-627(Retained) (Defense)
October 2008: Keating v. Broward Sheriff Al Lamberti and John Brooks, et al. U.S.
District Court Southern District of Florida Case No. 07-23005-CIV-
MARTINEZ/BROWN (Retained) (Defense)
October 2008: Unseld Nance, Sr., et al., v. Erik Sammis, et al., U.S. District Court
Eastern District of Arkansas, Case No. 3:07CV00119 BSM (Retained) (Defense)

October 2008: George Spicka v. Corparal Stewart, et al.,Circuit Court for Baltimore City, Case No. 24-C-07-009474 OT (Retained) (Defense)

October 2008: AFL-CIO, et al. v. City of Miami, et al., U.S. District Court Case No. 07-22966-Civ-Ungaro (Retained) (Defense)

October 2008: Cara Jennings, et al. v. City of Miami, et al. U.S. District Court, Case No. 07-23008-Civ-Martinez (Retained) (Defense)

October 2008: Kevin Farnan v. Eric Howley, Brian E. Turner, Scott E. Gaboury, Jason Noblet and Unnamed Law Enforcement Officers, Bennington Superior Court, Vermont No. 287-8-08Bncv(Retained) (Defense)

November 2008: Kevin Cobbs and Marlana Fichtner v. David Clements and Ethan Thibault, Vermont District Court No. 5941-11-05 Cncr (Retained)(Defense)

November 2008: Nicholas Goblirsch v. Jay Castonguay, et al., U.S. District Court District Of Minnesota, Case No. 08-CV-764 RHK/JJK (Retained)(Defense)

8